The Central Railroad Company of New Jersey v. P.U.C. and Blue Coal Corporation, Intervenor-Appellee.

Argued November 4, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS.

*Cody H. Brooks,* with him *Warren, Hill, Henkelman & McMenamin* and *Jack F. Aschinger,* for appellant.

*Albert W. Johnson, III,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for appellee.

*Bernard Brown,* with him *Franklin B. Gelder,* for intervenor-appellee.

OPINION BY JUDGE WILKINSON, December 22, 1971:
On July 2, 1969, Central Railroad Company of New Jersey (appellant) issued in Tariff 216 G, Pa. P.U.C. No. C. & C. 560, a new rate increasing the rates for unprepared coal in carloads transported from mines owned by Blue Coal Corporation (intervenor-appellee) to Huber Colliery in Ashley, Pennsylvania, an average distance of 8.6 miles, from an average of 21.5 cents per gross ton to an average of 65 cents to be effective August 4, 1969. Intervenor-appellee filed a complaint with the Pennsylvania Public Utility Commission (Commission). Hearings were held on November 7, 1969, April 6, 1970, and April 30, 1970. By Order dated June 21, 1971, the Commission found that the prior average rate of 21.5 cents was not compensatory but found that the proposed published rate of 65 cents was unjust and unreasonable. The Commission ordered a new tariff to be

published which would result in an average rate of 43 cents per gross ton. It is appellant's contention that the Commission was not justified in its reduction.

The law does not place the burden on the Commission. It is quite clear that the burden is on the appellant to show that the new rate is just and reasonable. Section 312 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 P.S. §1152, provides: "In any proceeding upon the motion of the Commission, involving any proposed or existing rate of any public utility, or in any proceeding upon complaint involving any proposed increase in rates, the burden of proof to show that the rate involved is just and reasonable shall be upon the public utility. . . ." This same Act in Section 1053, 66 P.S. §1437 and Section 1112, 66 P.S. §1442, respectively, and the many cases decided thereunder, establishes that the order of the Commission shall not be vacated or set aside on appeal except for error of law or lack of evidence to support it, and that the order shall be prima facie evidence of the facts found.

The Commission, with its findings and discussions, explains and justifies the rate that it allowed, which not insignificantly allowed a 100% increase in the previous rate being reduced from appellant's requested 200% increase. No good purpose would be served by here discussing all the many factors which the Commission allowed or disallowed. This has been done in sufficient detail by the Commission itself, and we find the same to be supported by the evidence. The principal item contested by appellant involves the allowance of a per diem rate for cars it owns. Such a rate is allowable. *New York Central Railroad v. Pennsylvania Public Utility Commission*, 191 Pa. Superior Ct. 124, 155 A. 2d 445 (1959). Appellant claims an allowance of $3.20 per car per day. It bases this on an average per diem from a sample of both company-owned and foreign cars said to fall between the rate of $1.79 and $12.00 a day.

This would vary in many factors that go into the cost of operating a particular car, its original cost, depreciation, conditions, etc. No comparison was made between these factors applying to foreign cars and company-owned cars. Without this the Commission would have been justified in finding the appellant has not met its burden on this factor or, as it appears to have done, could have made an allowance less than the $3.20 claimed.

Appellant takes exception to the Commission reducing its claim of cost factor for rental by 20%. The appellant claims a cost factor for rental of $59,371. This it computes by taking 2.61% of $2,283,482 which appellant testified was the annual rental paid for the 345.56 miles of track, nine miles of which were here involved. Appellant made no allowance for the use of the track by others or for other purposes or, more importantly, for the difference in the value of a lease on this admittedly poorly maintained side track as opposed to the remainder of the railroad. Here, as in other areas of this road, the Commission has wide discretion to make adjustments to appellant's cost estimates or averages as are warranted by the evidence. *Pittsburgh v. Pennsylvania Public Utility Commission*, 208 Pa. Superior Ct. 260, 222 A. 2d 395 (1966).

On the matter of the Commission's reduction of appellant's claim of a cost factor of normalized track maintenance from $35,148 to $5,000, suffice it to say that the record shows it to be uncontradicted that appellant has not done anything but emergency repairs as maintenance for several years and has not presented any convincing proof that it plans any in the future.

The Commission reduced appellant's claim for overhead costs from 60% to 40%. We find this to be justified in the record on the reasons given by the Commission: "Overhead costs are a legitimate charge, however the 60% allocation appears excessive. Since Frederick-

son's worksheets are not part of the record we are unable to ascertain what accounts in the 1968 Annual Report were used by Frederickson in determining direct costs and overhead costs. Nor are we convinced that there is no duplication of direct costs already assigned to unprepared coal. Certainly some of this overhead cost is calculated on the cost of hauling outbound prepared coal. . . ."

Order affirmed.